

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

FILED
FEB 03 2016

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| ESTATE OF CHERYL R. MOORE and PHILLIP MOORE, | CIV 14-4176 |
| Plaintiffs, | |
| v. | MEMORANDUM OPINION AND ORDER DENYING THIRD-PARTY DEFENDANT'S MOTIONS TO DISMISS AMENDED COMPLAINT AND THIRD-PARTY COMPLAINT |
| KEITH R. CARROLL, MACFARLANE PHEASANTS, INC., and JOHN DOE, | |
| Defendants and Third-Party Plaintiffs, | |
| v. | |
| DOUBLE D SERVICES, INC. and BLOCK DIESEL REPAIR, INC., | |
| Third-Party Defendants. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Before the Court is Third-Party Defendant Block Diesel Repair, Inc.'s ("Block Diesel") Federal Rule of Civil Procedure 12(b)(2) motion to dismiss for lack of personal jurisdiction MacFarlane Pheasants, Inc.'s ("MacFarlane") Third-Party Complaint. On June 30, 2015, Block Diesel filed the motion ("First Motion"). The First Motion was fully briefed and, on September 25, 2015, the Court issued an Order denying Block Diesel's motion to dismiss, Doc. 29. The Court intended to issue a memorandum opinion at a later date. Plaintiffs, Estate of Cheryl R. Moore and Phillip Moore, filed an amended complaint on November 12, 2015, Doc. 40. Then, on November 18, 2015, Block Diesel filed a subsequent motion ("Second Motion") to dismiss for lack of personal jurisdiction, but this time arguing that the Plaintiffs' Amended Complaint should be dismissed for lack of personal jurisdiction, Doc. 42. In the Second Motion, Block Diesel referenced and incorporated the documents filed in support of the First Motion. Block Diesel asserted neither new argument nor filed new documents in the Second Motion that were not originally asserted or filed in the First Motion. Neither Plaintiffs nor Third-Party Plaintiffs

1

filed a response to the Second Motion. Therefore, the two motions will be treated as one for purposes of this Memorandum Opinion and Order. For the following reasons, both motions are denied.

## BACKGROUND

Plaintiff Cheryl Moore was a South Dakota resident at the time of the alleged injury. In November 2012, she was injured when she rear-ended a vehicle being driven by Defendant and Third-Party Plaintiff Keith R. Carroll (Carroll) on U.S. Interstate 90 in Aurora County, South Dakota. The vehicle was owned by Defendant and Third-Party Plaintiff MacFarlane, a Wisconsin company in the business of raising and transporting pheasants. Plaintiffs filed suit in this Court for negligence and loss of consortium against MacFarlane and Carroll. According to Plaintiffs' Amended Complaint, MacFarlane's taillights were malfunctioning and difficult to see, which ultimately caused Moore to collide with MacFarlane's vehicle.

MacFarlane filed a Third-Party Complaint[1] against Double D Services, Inc., the seller of the vehicle who is not a part of this motion, and Block Diesel for indemnity and contribution should MacFarlane be found liable for damages. MacFarlane argues that, under federal law, reflective tape must be attached to the rear of a vehicle such as MacFarlane's. According to MacFarlane, in June 2012, five months prior to the accident with Plaintiffs, Block Diesel performed a federal DOT inspection on the MacFarlane vehicle in issue.[2] When performing the inspection, Block Diesel failed to detect either the damaged taillights or the absence of reflective tape. According to the affidavit of Bill MacFarlane, Block Diesel has been performing these federal inspections for MacFarlane for ten to fifteen years and that Block Diesel is aware of the extensive amount of travel MacFarlane does into South Dakota. Affidavit of Bill MacFarlane,[3] Doc. 26-1, at 2.

---

[1] The Third-Party Complaint, Doc. 14, was filed by MacFarlane and Carroll. The brief in opposition to Block Diesel's motion, Doc. 26, however, was filed by only MacFarlane.

[2] According to 49 CFR § 390.3(a), "The rules in subchapter B of this chapter are applicable to all employers, employees, and commercial motor vehicles, which transport property or passengers in interstate commerce." 49 CFR § 390.3(a). Furthermore, 49 CFR § 396.17(a) requires that

> [e]very commercial motor vehicle must be inspected as required by this section. The inspection must include, at a minimum, the parts and accessories set forth in appendix G of this subchapter. The term commercial motor vehicle includes each vehicle in a combination vehicle. For example, for a tractor semitrailer, full trailer combination, the tractor, semitrailer, and the full trailer (including the converter dolly if so equipped) must each be inspected.

49 CFR § 396.17(a).

[3] In its Reply Brief, Block Diesel argues that the statements contained in Bill MacFarlane's affidavit are conclusory and, therefore, should be stricken. For this argument Block Diesel cites to this Court's opinion in *SFRL*,

2

Block Diesel is, like MacFarlane, a Wisconsin company. The business provides tractor trailer repair services through two shops, one in Janesville, Wisconsin and the other in Tomah, Wisconsin. Block Diesel is incorporated in Wisconsin and its only places of business are there. It is not registered to do business in South Dakota as a foreign corporation and does not have any physical presence there. Block Diesel has no offices, shareholders, officers, directors, or employees in South Dakota and owns no property in South Dakota. In addition, Block Diesel does not directly market, manufacture, deliver, distribute, or sell products into South Dakota. In sum, Block Diesel does not directly engage in any relationship with South Dakota or its citizens.

## STANDARD OF REVIEW

To withstand a motion to dismiss for lack of personal jurisdiction, "a plaintiff 'must state sufficient facts in the complaint to support a reasonable inference that [the defendants] can be subjected to jurisdiction within the state.'" *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (quoting *Block Indus. v. DHJ Indus, Inc.*, 495 F.2d 256, 259 (8th Cir. 1974)) (alteration in original). Once a defendant controverts personal jurisdiction, the plaintiff bears the burden of proving it exists. *Id.* (quoting *Block Indus.*, 495 F.2d at 259). *See* Procedural Aspects of Personal Jurisdiction, 4 Fed. Prac. & Proc. Civ. § 1067.6 (4th ed.) ("If the district court has

---

*Inc. v. Galena State Bank and Trust Co.*, No. CIV. 10-4152, 2011 WL 4479065, at *1 (D.S.D. Sep. 22, 2011) ("When conclusory allegations in a complaint are contested and no factual foundation is supplied, the conclusory allegations are insufficient to confer personal jurisdiction over a nonresident defendant."). That case, however, dealt with the allegations contained in the complaint, not an affidavit in opposition of a motion to dismiss. In similar fashion, *Steinbuch v. Cutler*, 518 F.3d 580 (8th Cir. 2008), discusses how personal jurisdiction over a defendant cannot rest on the conclusory allegations contained in the plaintiff's complaint and that, once a defendant controverts personal jurisdiction, the plaintiff must submit affidavits and other documentary evidence that may then be considered alongside the complaint's allegations. *See Steinbuch*, 518 F.3d at 589 ("[The plaintiff] failed to meet his burden of proving jurisdiction by providing any affidavits, testimony, or documents in response to Disney's affidavit denying control over Hyperion and challenging personal jurisdiction.").

The remaining cases cited by Block Diesel, *Ways v. City of Lincoln*, 206 F. Supp. 2d 978 (D. Neb. 2002) and *Central States Indus. Supply, Inc. v. McCullough*, 279 F. Supp. 2d 1005 (N.D. Iowa 2003), are in the context of either motions for summary judgment or motions to strike affidavits. Specifically, in *Central States*, the affidavits in dispute there were submitted after depositions had been taken and, it was argued, were inconsistent with the deposition testimony. *Central States*, 279 F. Supp. 2d at 1017. In addition, the court there noted that affidavits based on "information and belief" are not based on personal knowledge and, therefore, inadmissible. *Id.* at 1018. Here, Block Diesel has not moved to strike portions of Bill MacFarlane's Affidavit. There have been no depositions taken with which the MacFarlane Affidavit is inconsistent. The Affidavit does not purport to be based on "information and belief." Even if the Court were to treat Block Diesel's argument as a motion for summary judgment or a motion to strike, based on the limited record before it, the Court finds no reason to believe that the MacFarlane Affidavit is not based on personal knowledge. *Brooks v. Tri-Systems, Inc.*, 425 F.3d 1109, 1111-12 (8th Cir. 2005) ("In some instances, courts will infer personal knowledge from the content and context of a statement in an affidavit.") (citation omitted). In addition, "a critical failing of a 'conclusory' statement is that it 'is devoid of any specific factual allegations.'" *Marsh v. Hog Slat, Inc.*, 79 F. Supp. 2d 1068, 1073 (N.D. Iowa 2000) (quoting *Allen v. Entergy Corp.*, 181 F.3d 902, 906 (8th Cir. 1999)). Here, however, the MacFarlane Affidavit specifies that Block Diesel undertakes DOT inspections and has been performing them for MacFarlane for ten to fifteen years. In any event, the Court will consider the MacFarlane Affidavit in its entirety.

3

not conducted a discretionary evidentiary hearing on a nonresident defendant's motion to dismiss for lack of jurisdiction, under Rule 12(b)(2), the plaintiff has the burden of establishing a prima facie case of personal jurisdiction over that defendant."). In carrying that burden, the plaintiff's *prima facie* showing is tested through the pleadings as well as affidavits and exhibits presented in opposition to the defendant's motion to dismiss. *Dever*, 380 F.3d at 1072 (quoting *Block Indus.*, 495 F.2d at 260). For purposes of the *prima facie* showing, the evidence, taken as true, is viewed in the light most favorably to the plaintiff. *Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996) (citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991)).

## DISCUSSION

"'A federal court in a diversity action may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause'" of the United States Constitution. *Dever*, 380 F.3d at 1073 (quoting *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1280 (8th Cir. 1991)). South Dakota construes its long-arm statute to the fullest extent of the Due Process Clause. *Larson Mfg. Co. of South Dakota v. Connecticut Greenstar, Inc.*, 929 F. Supp. 2d 924, 926 (D.S.D. 2013) (citing *Dakota Indus. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994)). Thus, personal jurisdiction analysis collapses into a single inquiry: federal due process. *Id.* See Fed. Prac. & Proc., *supra*, at § 1068 ("A state's judicial interpretations of the reach of its jurisdictional statutes are binding on the federal courts.").[4]

"Due Process requires 'minimum contacts' between [a] non-resident defendant and the forum state such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (quoting *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 291-92, 100 S.Ct.

---

[4] Block Diesel makes much of the necessity that South Dakota's long-arm statute must be satisfied before a court may consider constitutional due process requirements. The Court is not persuaded. The Eighth Circuit has ruled that when a state's long-arm statute extends the reach of constitutional due process, the court's inquiry collapses into the single-track constitutional due process analysis. *Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 612 (8th Cir. 1994) ("Nebraska has construed its long-arm statute to confer jurisdiction to the limits of due process, so our familiar two-part analysis in diversity cases of whether the forum's long-arm statute is satisfied and, if so, whether the exercise of jurisdiction comports with due process, collapses into the single question of whether due process would be violated by the exercise of jurisdiction over [the out-of-state defendant] in [the] case."). South Dakota has interpreted its long-arm statute to be co-extensive with constitutional due process. That being the case, so long as constitutional due process is satisfied, South Dakota's long-arm statute is satisfied. An independent analysis of each would be redundant and it is only necessary that the Court ensure that constitutional due process is comported with.

559, 62 L.Ed.2d 490 (1980)). In evaluating minimum contacts, the Supreme Court has promulgated two theories: general jurisdiction and specific jurisdiction.[5] *Dever*, 380 F.3d at 1073. Under general jurisdiction, a federal court has personal jurisdiction over a defendant who has "continuous and systematic" contacts with the forum state, even if the plaintiff's cause of action does not arise from those "continuous and systematic" contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). If a court has general jurisdiction over a defendant, it is said the defendant's affiliations with the forum State "in which suit is brought are so constant and pervasive 'as to render [the defendant] essentially at home in the forum State.'" *Daimler AG v. Bauman*, __ U.S. __, 134 S.Ct. 746, 751, 187 L.Ed.2d 624 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, __ U.S. __, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011)). Alternatively, "specific jurisdiction is viable only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state." *Dever*, 380 F.3d at 1073 (citation omitted). For personal jurisdiction under a theory of specific jurisdiction to exist, therefore, the cause of action must arise or relate to the defendant's actions within the forum state. *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994).

Under either theory of personal jurisdiction, it is required that "'some act [be shown] by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Dever*, 380 F.3d at 1073 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). Upon concluding that a defendant has minimum contacts with the forum State, a court "may then consider 'whether the assertion of personal jurisdiction would comport with fair play and substantial justice.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)) (internal citation omitted).

Combining the foregoing, the Eighth Circuit has instructed its district courts to apply a five-factor test when assessing personal jurisdiction over an out-of-state defendant: "'(1) the nature and quality of [a defendant's] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) [the] convenience of the parties.'" *Id.* at 1073-74 (quoting *Burlington Indus.*, 97 F.3d at 1102). *See Stanton v. St. Jude Medical, Inc.*, 340 F.3d 690,

---

[5] Here, MacFarlane contends only that this Court has specific jurisdiction over Block Diesel.

694 (8th Cir. 2003) ("We apply a five factor test in analyzing the constitutional [due process] requirements needed for personal jurisdiction."); *Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 746 n. 4 (8th Cir. 2011) (reaffirming the five-factor test's viability but noting that it is not to be "mechanically applied"). The first three factors carry significant weight, while the final two are of less importance. *Dever*, 380 F.3d at 1074. The Eighth Circuit has further stated that the third factor is meant to draw a distinction between specific jurisdiction and general jurisdiction. *Burlington Indus.*, 97 F.3d at 1102. Because of the interrelationship of the factors, the Eighth Circuit has regularly considered them, especially the first three factors, together. *See Id.* at 1102-03; *Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983); *Dever*, 380 F.3d at 1073-74; *Guinness Import Co. v. Mark VII Distribs., Inc.*, 153 F.3d 607, 614 (8th Cir. 1998). In fact, the five factors "do not provide 'a slide rule by which fundamental fairness can be ascertained with mathematical precision[,]'" *Land-O-Nod*, 708 F.2d at 1340 (quoting *Toro Co. v. Ballas Liquidating Co.*, 572 F.2d 1267, 1269 (8th Cir. 1978)), and should not be mechanically applied. *Pangaea*, 647 F.3d at 764 n. 4. *See Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 596 (8th Cir. 2011) (quoting *Anderson v. Dassault Aviation*, 361 F.3d 449, 452 (8th Cir. 2004)) ("To be sure, we have emphasized that determining whether personal jurisdiction exists in a given case 'involves applying principles of fairness and reasonableness to a distinct set of facts, and the determination is not readily amenable to rigid rules that can be applied across the entire spectrum of cases.'"). "No one factor is determinative, and the Court's decision is based on the totality of the circumstances." *Marine Innovations Warranty Corp. v. American Marine Holdings, Inc.*, No. Civ. 03-4646JRTFLN, 2004 WL 234398, at *2 (D. Minn. Feb. 4, 2004) (citing *Northup King Co. v. Compania Productora Semillas Algondoneras Selectas, S.A.*, 51 F.3d 1383, 1388 (8th Cir. 1995)). If the court has doubts as to its jurisdiction over the defendant, those should be resolved in favor of retaining jurisdiction. *Id.* (citations omitted). Ultimately, when applying these factors, the central inquiry should always remain the "'relationship among the defendant, the forum, and the litigation.'" *Guinness*, 153 F.3d at 614 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)).

There is no dispute that Block Diesel lacks the traditional types of contacts with South Dakota that would normally subject it to jurisdiction here. That is to say, Block Diesel is not a South Dakota business, has never done or applied to do business in South Dakota, and has no

employees, agents, property, or other contacts in South Dakota. It is situations such as this that the United States Supreme Court has placed less emphasis on the territorial jurisdiction of each state and, instead, focused on the actions of the defendant and the corresponding impact on the forum State. As a result, two theories of specific jurisdiction have emerged: the "effects" test, *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *Walden v. Fiore*, __ U.S. __, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014), and the "stream of commerce" theory, *J. McIntyre Machinery, Ltd v. Nicastro*, __ U.S. __, 131 S.Ct. 2780, 180 L.Ed.2d 765 (2011); *Asahi Metal Industry Co., Ltd v. Superior Court of California, Salano County*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The Court will focus only on the "stream of commerce" theory.[6]

The Supreme Court first addressed the "stream of commerce" theory of specific personal jurisdiction, albeit indirectly, in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). There, the Court found personal jurisdiction to be lacking over the defendants, an automobile wholesaler and retailer, who carried on no activity in Oklahoma, the State where the plaintiff's injury occurred. The plaintiff had unilaterally brought the vehicle from New York, where it was purchased, to Oklahoma. The Supreme Court, in disagreeing with the plaintiffs that personal jurisdiction existed, found that the only connection between Oklahoma and the defendants was the incidental circumstance that the vehicle sold to the

---

[6] MacFarlane argues that the "effects" test, as well as the "stream of commerce" theory, has application here. The Court disagrees. Most recently, in *Walden v. Fiore*, the Supreme Court explained that, even when intentional torts are involved, jurisdiction must be based on minimum contacts gained by the defendant through purposeful availment. __ U.S. __, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014). The *Walden* Court explained, "A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden*, 134 S.Ct. at 1123. See Fed. Prac. & Proc., *surpa*, at § 1069.1 ("[C]omitting an act outside of the forum state that causes tortious injury therein might not be sufficient if the defendant did not engage in purposeful activity establishing the required minimum contacts with the forum state."). Case law the Court has been directed to or found through its own research confirms that the "effects" test only has application when intentional torts, as opposed to negligence, are in issue. *See e.g., Walden*, 134 S.Ct. at 1120 (*Bivens* action related to alleged Fourth Amendment violations); *Calder*, 465 U.S. at 784 (libel); *Viasystems*, 646 F.3d at 593 (tortious interference); *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1384 (8th Cir. 2006) (trademark infringement); *Amerus Group Co. v. Ameris Bancorp*, No. 4:06-CV-00110, 2006 WL 1452808, at *1 (S.D. Iowa May 22, 2006) (same); *Estate of Witko v. Hornell Brewing Co.*, 156 F. Supp. 2d 1092, 1094 (D.S.D. 2001) (defamation, misappropriation and misuse of inheritable property rights, privacy violations, and negligent and intentional infliction of emotional distress). Moreover, the Eighth Circuit applies a three-part test when evaluating personal jurisdiction under the "effects" test. Under the three-part test, a State may assert personal jurisdiction

> over a defendant based on the in-state effects of the defendants' extraterritorial tortious acts only if those acts "(1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered–and which the defendant knew was likely to be suffered–[in the forum state]."

*Viasystems*, 646 F.3d at 594 (quoting *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010)).

7

plaintiffs became involved in an accident in Oklahoma. The Supreme Court rejected the argument that, due to automobiles' inherent mobile design, it was foreseeable to the defendants that their product could end up in Oklahoma. The *World-Wide Volkswagen* Court held that

> the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum state. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.

*World-Wide Volkswagen*, 444 U.S. at 297. The Court further explained that a forum State may exercise personal jurisdiction over an out-of-state corporation who "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." *Id.* at 297-98.

The Supreme Court returned to the "stream of commerce" theory in *Asahi Metal Industry Co., Ltd v. Superior Court of California, Salano County (Asahi)*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). There, in a plurality opinion, Justice O'Connor attempted to narrow the theory's application. In an opinion joined by only three other Justices, Justice O'Connor wrote,

> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Asahi*, 480 U.S. at 112 (O'Connor, J.). Writing his own concurring opinion, with three justices joining, Justice Brennan disagreed with Justice O'Connor's "stream of commerce plus" construction. Instead, Justice Brennan saw

> no need for such a showing []. The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale. As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise.

*Id.* at 117 (Brennan, J.). Thus, while the Court ultimately held that personal jurisdiction over Asahi, a Japanese corporation that manufactured component parts for motorcycles, did not exist,

8

no opinion garnered a majority vote. "In short, *Asahi* stands for no more than that it is unreasonable to adjudicate third-party litigation between two foreign companies in this country absent consent by the nonresident defendant." *Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 614 (8th Cir. 1994).

Most recently, in the 2011 case *J. McIntyre Machinery, Ltd v. Nicastro*, the Supreme Court was again faced with how to interpret specific jurisdiction under the "stream of commerce" theory. __ U.S. __, 131 S.Ct. 2780, 180 L.Ed.2d 765 (2011). Resulting in another plurality opinion, the Court ultimately found that personal jurisdiction did not exist over J. McIntyre, a British corporation. In so concluding, Justice Kennedy, writing the lead opinion joined by three other justices, rejected Justice Brennan's *Asahi* concurrence. Finding that Justice Brennan relied too heavily on general notions of foreseeability in *Asahi*, Justice Kennedy stated, "The principal inquiry in cases of this sort is whether the defendant's activities manifest an intention to submit to the power of a sovereign. In other words, the defendant must 'purposefully avai[l] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *McIntyre*, 131 S.Ct. at 2788 (quoting *Hanson*, 357 U.S. at 253) (Kennedy, J.) (alteration in original). Justice Kennedy wrote that the Supreme Court's personal jurisdiction jurisprudence "makes clear that it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment." *Id.* at 2789. In sum, Justice Kennedy's construction of the "stream of commerce" theory was based on the idea that "[t]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum state." *Id.* at 2788. *See* Fed. Prac. & Proc., *supra*, at § 1067.4 (quoting *McIntyre*, 131 S.Ct. at 2789 (Kennedy, J.)) ("Justice Kennedy also explained that personal jurisdiction is a forum-by-forum analysis, appropriate only when a '[d]efendant has followed a course of conduct directed at the society or economy existing within the jurisdiction of a given sovereign, so that the sovereign has the power to subject the defendant to judgment concerning that conduct.'") (alteration in original).

"Justice Breyer's concurring opinion[, joined only by Justice Alito,] rested on significantly narrower grounds. Relying on *World-Wide Volkswagen* and all three *Asahi* opinions, Justice Breyer explained that—standing alone—the unilateral act of an independent intermediary reselling a single good to New Jersey cannot suffice to exercise jurisdiction over

9

the manufacturer there." Fed. Prac. & Proc., *supra*, at § 1067.4. In so concluding, the concurrence noted that the defendant was in no way involved in any regular course of business in the forum State; that there was no "something more" tying the defendant to the forum. *McIntyre*, 131 S.Ct. at 2792 (Breyer, J.) (discussing several of the "plus" factors listed by Justice O'Connor in the *Asahi* plurality). Justice Breyer saw no need to go further, however, and took a very narrow view of the record, declining to broaden the discussion in the way that Justice Kennedy's opinion did. Fed. Prac. & Proc., *supra*, at § 1067.4. "Given the lack of a majority opinion, many lower courts have indicated that Justice Breyer's concurring opinion constitutes the Court's holding, although many lower courts have relied on Justice Kennedy's plurality opinion." *Id.* (listing cases).

Since the Supreme Court has not ruled conclusively on the bounds of the "stream of commerce" theory, this Court will next turn to Eighth Circuit case law. "Personal jurisdiction may be found where a seller uses a distribution network to deliver its products into the stream of commerce with the expectation that the products will be purchased by consumers in the forum state." *Stanton*, 340 F.3d at 694 (citing *World-Wide Volkswagen*, 444 U.S. at 297-98). Thus, the Eighth Circuit recognizes *World-Wide Volkswagen's* instruction that "[p]lacement of product into the stream of commerce, without more, does not constitute an act of the defendant purposefully directed toward the forum State." *Falkirk Mining Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369, 376 (8th Cir. 1990). *See Guinness*, 153 F.3d at 614-15 (finding that the plaintiff failed to show that a Jamaican beer brewer exercised control over distributors once beer left Jamaica sufficient for personal jurisdiction purposes); *Vandelune v. 4B Elevator Components Unlimited*, 148 F.3d 943, 948 (8th Cir. 1998) ("[A] manufacturer whose product ends up in the forum State on an 'attenuated, random, or fortuitous' basis has not purposefully directed its activities at residents of that State."). Since *World-Wide Volkswagen*, "some circuit courts have chosen to adopt *Asahi's* narrowing of the stream of commerce rule[.] [O]ther circuits have not, [however,] including the Eighth Circuit." *Mason v. Mooney Aircraft Corp.*, No. 02-3323-CV-S-RED, 2003 WL 21244160, at *6 (W.D. Mo. May 8, 2003). Instead, the Eighth Circuit applies a variant of *Asahi* and its progeny's "stream of commerce" theory.

> While our circuit has held that the mere placement of a product into the stream of commerce, without more, does not constitute an act of the defendant purposefully directed toward the forum State, we have been willing to recognize a variant of 'stream-of-commerce' jurisdiction over a foreign manufacturer that pours its

> products into a regional distributor with the expectation that the distributor will penetrate a discrete, multi-State trade area[.]

*Viasystems*, 646 F.3d at 597 (internal quotations and citations omitted). *See Dever*, 380 F.3d at 1075 (quoting *Vandelune*, *supra*) ("Moreover, nothing in the record suggests that [the defendant] 'pour[ed] its products into a regional distributor with the expectation that the distributor [would] penetrate [the Arkansas market].'") (first alteration added); *Guinness*, 153 F.3d at 615 n. 7 (recognizing the Eighth Circuit's "stream of commerce" variant but refusing to apply it to the facts presented, which involved a contract dispute between two merchants as opposed to the personal injury claim against the manufacturer in *Vandelune*). Along with its promulgation of the "stream of commerce" variant, the Eighth Circuit has been "careful to note that 'stream of commerce' jurisdiction is 'a type of specific jurisdiction (as opposed to general jurisdiction).'" *Viasystems*, 646 F.3d at 597 (quoting *Barone*, 25 F.3d at 612).

As it relates to the Eighth Circuit's five factor test, "stream of commerce" analysis is, in effect, an overlay through which the five factors, or constitutional due process, may be viewed. Thus, while the Eighth Circuit's "stream of commerce" variant does not supplant the factors, it can augment the analysis. *See e.g., Barone*, 25 F.3d at 612-15 (no explicit application of the five-factor test but, instead, the Eighth Circuit Court introduces the "stream of commerce" variant); *Vandelune*, 148 F.3d at 947-48 (no explicit application of the five-factor test but, instead, the discussion is confined to whether the "stream of commerce" variant applies); *Viasystems*, 646 F.3d at 592-98 (same); *Dever*, 380 F.3d at 1073-76 (court states that the five-factor test applies, but does not explicitly apply each factor and, instead, considers whether the "stream of commerce" variant applies); *Guinness*, 153 F.3d at 614-15 (court applies five-factor test to activities carried on by the out-of-state defendant in the forum State but applies the "stream of commerce" variant to activities directed at the forum State). *See also Mason*, 2003 WL 21244160, at *5 (quoting *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 427 (Fed. Cir. 1996)) ("[The stream of commerce theory] provides an 'analytical tool useful in cases in which the defendant's contacts are the result of establishing a distribution network in the forum State for the sale of the defendant's products. . . .'").

Understanding that the Eighth Circuit applies its own version of "stream of commerce" jurisdiction to qualifying out-of-state defendants, this Court finds that variant aptly applies here. That Block Diesel provides a service, as opposed to manufacturing a product, does not preclude

11

the doctrine's application. The record shows that Block Diesel provided a service to MacFarlane of inspecting vehicles for interstate travel consistent with federal DOT regulations. Affidavit of Bill MacFarlane at 2. Moreover, this service has been provided by Block Diesel to MacFarlane for at least a decade. *Id.* In the course of that time, Block Diesel had been made aware of MacFarlane's consistent travel to South Dakota. *Id.* That being the case, the Court finds that Block Diesel has "pour[ed] its products into a regional distributor with the expectation that the distributor will penetrate a discrete, multi-State trade area[.]" *Viasystems*, 646 F.3d at 597 (internal quotations and citations omitted).

*Barone* is instructive here. There, Hosoya Fireworks Co. ("Hosoya"), a company based in Tokyo, Japan, manufactured fireworks that it sold to distributors. Rich Bros. Interstate Display Fireworks Co. ("Rich Bros."), a fireworks distributor based in Sioux Falls, South Dakota, bought its supply of fireworks from Hosoya. Rich Bros. was one of nine distributors in six states that purchased fireworks from Hosoya. Rich Bros. would then sell the fireworks it purchased through its own six regional salesmen and catalogs by mail. In this manner, Rich Bros. sold fireworks to Plaintiff Barone, a Nebraska resident, who was injured when helping with a fireworks display put on by his employer. According to Rich Bros., sixteen percent of the fireworks it purchased from Hosoya were sold into Nebraska. Barone sued Hosoya and Rich Bros. in United States District Court, District of Nebraska. Subsequently, Hosoya moved for dismissal based on a lack of personal jurisdiction as it "ha[d] no office in Nebraska, no agent for service of process, no distributor. It [did] not advertise in Nebraska, nor [did] it directly send any of its products into Nebraska." *Barone*, 25 F.3d at 611. Hosoya's fireworks, however, were sold into Nebraska through intermediaries such as Rich Bros. The district court granted Hosoya's motion to dismiss.

The Eighth Circuit, however, found that personal jurisdiction existed based on the "stream of commerce" variant that it therein created. *Id.* at 615 ("[I]n this case the defendant poured its products into regional distributors throughout the country, and now would have this court believe that it had no idea its products were being distributed into neighboring states."). In so concluding, the *Barone* Court, noted that "South Dakota[, wherein Rich Bros. was based,] is not a particularly populous state; Sioux Falls is conveniently located within short distance of three other states, and the very name of the distributor is 'Rich Bros. *Interstate* Display Fireworks Co.'" *Id.* at 613 (emphasis in original). Ultimately, the Eighth Circuit concluded, "Hosoya has reaped the benefits of its network of distributors, and it is only reasonable and just

that it should now be held accountable in the forum of the plaintiff's choice (as long as that choice of forum comports with due process, which we believe it does). More than reasonable foreseeability is at stake here, as it must under existing case law, for Hosoya has purposefully reaped the benefits not only of South Dakota's laws, but of Nebraska's as well." *Id.* at 615.

Here, Block Diesel's product is a service. Specifically, the service is the provision of safety inspected vehicles into the interstate system under federal DOT regulation. The fact that Block Diesel had been informed of MacFarlane's consistent service of the South Dakota market bolsters the argument that Block Diesel should have "reasonably anticipate[d] being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297. In addition, that Block Diesel has been providing the same service to MacFarlane for ten to fifteen years establishes the quality and quantity of contacts sufficient to cause the first two factors of the Eighth Circuit's five-factor test to weigh in MacFarlane's favor. *See Marine Innovations*, 2004 WL 234398, at *3 (exercise of personal jurisdiction proper when the relationship between the parties, and thus the defendant's contact with the forum, has been ongoing for over four years). Block Diesel cannot undertake a service meant to ensure safe travel consistent with DOT regulations and simultaneously argue that it could not foresee being haled into a court of another State. Next, given that personal jurisdiction here falls under a "stream of commerce" theory, the third factor weighs in favor of specific jurisdiction. As to the fourth factor, given that neither MacFarlane nor Block Diesel is a South Dakota resident, it could appear that the fourth factor would weigh against the Court finding personal jurisdiction. In any event, because of the dependence on Plaintiffs' case, the Court finds the fourth factor to also weigh in favor of jurisdiction, however slight the weight, due to Plaintiffs being South Dakota residents. The fifth factor is moot in that the defendants are certainly inconvenienced to some degree by being haled into a State that is not their own, but it is, conversely, convenient for the South Dakota resident Plaintiffs. In sum, viewing the record in the light most favorable to MacFarlane, the nonmoving party, the Court finds that MacFarlane has made an adequate *prima facie* showing of specific personal jurisdiction.

Block Diesel relies on *Soo Line R. Co. v. Hawker Siddeley Canada, Inc.*, 950 F.2d 526 (8th Cir. 1991), for its argument that personal jurisdiction does not exist here. The Court is unpersuaded. Hawker Siddley was a Canadian corporation that manufactured railroad cars. It maintained no offices in Minnesota, where it was eventually sued by the plaintiff for damages sustained due to derailment of one of Hawker Siddeley's railroad cars. Hawker Siddeley

employed Unity Railway Supply Company ("Unity"), an Illinois corporation, to promote Hawker Siddeley's products in the United States and refer sales. Unity did not have the authority to enter into contracts on behalf of Hawker Siddeley and no Minnesota sales were ever referred to Hawker Siddeley by Unity. Moreover, Hawker Siddeley had made only one sale in Minnesota in the fifteen years preceding the Eighth Circuit decision in the case. Hawker Siddeley conceded, however, that many of its railcars likely travelled through Minnesota. Hawker Siddeley railcars and wheels were manufactured in compliance with the Association of American Railroads' ("AAR") set standards. AAR was not a governmental entity. Hawker Siddeley sold a railcar to a Canadian division of North American Car Corporation ("North American"). Through a series of contracts between North American and other organizations, one of Hawker Siddeley's railcars was travelling through Winona, Minnesota when it derailed and damaged other railcars, track, and freight. Soo Line, the plaintiff in the case, filed suit against Hawker Siddeley for damages. The district court denied Hawker Siddeley's motion to dismiss for lack of personal jurisdiction. The Eighth Circuit reversed.

In coming to its holding, the Eighth Circuit rejected the plaintiff's argument that "Hawker Siddeley identified and purposefully targeted a discrete market, and thus it could reasonably expect to be haled into court anywhere within the interchange service market." *Soo Line*, 950 F.2d at 529. The *Soo Line* Court, relying on *World-Wide Volkswagen*, stated that to find personal jurisdiction "would subject Hawker Siddeley to suit anywhere its customers use its railcars." *Id.* The Court refused to, in effect, appoint a seller's product as an agent for service of process. *Id.* The Court also found that Soo Line's argument impermissibly "equate[d] purposeful availment of the opportunity to enter a market with purposeful availment of a forum state's benefits and protections." *Id.* Finally, the *Soo Line* Court noted that "[e]ven if many Hawker Siddeley railcars have travelled through Minnesota, this resulted from the actions of third parties and cannot be considered contact with the state by Hawker Siddeley." *Id.* at 530.

Here, however, the contact with South Dakota is not a single, unremarkable sale as it was in *Soo Line*. Instead, as mentioned above in the Court's discussion of *Barone*, Block Diesel has been providing a service meant to ensure safe interstate travel to the same customer, MacFarlane, for at least a decade. In addition to that, Block Diesel has been made aware of MacFarlane's extensive service of the South Dakota market. In combination, the possibility of an accident involving MacFarlane's vehicles cannot be said to be so remote as to make it unreasonable for

Block Diesel to anticipate being haled into a court in South Dakota. Moreover, the defendant in *Soo Line* was a Canadian corporation, with several contracts and a lease separating its sale of the railcar to North American and the railcar finding its way into Minnesota. No such degree of separation exists in the case at bar. Block Diesel, a Wisconsin corporation, could have reasonably foreseen its "product" finding its way into South Dakota with a greater degree of certainty than Hawker Siddeley foreseeing its railcar entering Minnesota. In addition, Block Diesel is performing a federally mandated safety service for use on the highways. Finally, while no contract that this Court is aware of exists between MacFarlane and Block Diesel other than their long history of service, MacFarlane still remains the "indirect relationship with either this accident or with anyone in [South Dakota][]" that was missing relative to Hawker Siddeley and Unity. *Id.*

## CONCLUSION

Because of the nature of Block Diesel's federally regulated service, and the consistency with which Block Diesel provided the service to MacFarlane, the Court holds that it has specific personal jurisdiction over Third-Party Defendant Block Diesel. Pursuant to *Viasystems* and other above-cited Eighth Circuit precedent, the Court finds that Block Diesel has "pour[ed] its products into a regional distributor with the expectation that the distributor will penetrate a discrete, multi-State trade area[.]" *Viasystems*, *supra*. Accordingly,

IT IS ORDERED that (1) Third-Party Defendant Block Diesel Repair, Inc.'s motion to dismiss Defendant and Third-Party Plaintiff MacFarlane Pheasants, Inc.'s Third-Party Complaint for lack of personal jurisdiction, Doc. 18, is denied and (2) Third-Party Defendant Block Diesel Repair, Inc.'s motion to dismiss Plaintiffs Estate of Cheryl R. Moore and Phillip Moore's Amended Complaint, Doc. 40, is denied.

Dated this 3rd day of February, 2016.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: _____
Deputy